# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **18 KT.TV, LLC,** | : | **No. 3:11cv244** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **ENTEST BIOMEDICAL, INC.;** | : | |
| **BIO-MATRIX SCIENTIFIC GROUP,** | : | |
| **INC.; and DAVID R. KOOS,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion to dismiss and strike pursuant to

Federal Rule of Civil Procedure 12.  (Doc. 10).  The issues have been fully briefed

and the parties appeared before the court for oral argument.  For the following

reasons, defendants' motion will be granted in part and denied in part.

**Background**

This case arises out of a business dispute between the parties.  Plaintiff

18KT.TV, LLC (hereinafter "plaintiff") is a financial consulting firm based in Wilkes-

Barre, PA.  (Doc. 7, Am. Compl. (hereinafter "A.C.") ¶ 1).  Craig Fischer is plaintiff's

sole member.  (Id. ¶ 2).  On August 11, 2009, plaintiff entered into a twelve month

written contract with Defendant Bio-Matrix Scientific Group, Inc. (hereinafter "Bio-

Matrix") for consulting and web-based marketing services (hereinafter the "Bio-Matrix

Agreement").  (Id. ¶¶ 21-22).  Fischer entered the Bio-Matrix Agreement on behalf of

plaintiff and Defendant David R. Koos (hereinafter "Koos"), Bio-Matrix's corporate

president, chief executive, and chairman of the board, executed the contract on

behalf of Bio-Matrix in his capacity as a corporate officer.  (Doc. 7-1, Ex. A, Bio-

Matrix Scientific Group, Inc. Consulting Services Agreement (hereinafter "Bio-Matrix

Agreement") at 9; A.C. ¶ 10).

The services plaintiff promised to perform under the Bio-Matrix Agreement are

as follows:

> (a) Identify catalysts and value propositions, as they relate to the
> Company's growth strategy;
> (b) Facilitate the establishment and distribution of SEC compliant press
> releases to relay growth strategy to the financial community;
> (c) Distribute an investment profile for the Company on Consultant's
> website, www.EquityDigest.com.
> (d) Investor relations advice;
> (e) Schedule and facilitate strategic shareholder calls with the
> management of the Company;
> (f) Coordinate opt-in e-mail notifications; and
> (g) Evaluate and provide an updated investor relations plan at 90-day
> intervals.

(Bio-Matrix Agreement at 1).  The Bio-Matrix Agreement provides that plaintiff

receives 1.5 million shares of restricted Bio-Matrix common stock for its services.

(A.C. ¶¶ 23-24).  Plaintiff alleges that it fully performed its obligations under the Bio-

Matrix Agreement, but has not been paid the promised compensation of 1.5 million

restricted Bio-Matrix common shares.  (A.C. ¶¶ 25-27).  Plaintiff alleges that Bio-

Matrix has no justification for its breach and that it is entitled to 1.5 million Bio-Matrix

common shares.

On August 25, 2009, plaintiff and Defendant Entest Biomedical, Inc.

(hereinafter "Entest") entered into a twelve-month consulting contract (hereinafter the

2

"Entest Agreement").  (Id. ¶ 30).  The services subject to the Entest Agreement are identical to Bio-Matrix Agreement.  (Doc. 7-1, Ex. B, Entest BioMedical Inc. Consulting Services Agreement (hereinafter "Entest Agreement") at 1).  The Entest Agreement provides plaintiff with 250,000 shares of Entest restricted common stock for its services.  (A.C. ¶¶ 32-33).  Entest issued 50,000 shares to Craig Fischer, and these shares paid a dividend of $200,000 in 2009.  (Id. ¶ 36; Doc. 7-1, Ex. C, Entest Biomedical, Inc. Stock Certificate; Ex. D, Form 1099-DIV).  Fischer and Koos signed the Entest Agreement, like the Bio-Matrix Agreement, in their professional capacities.  (Entest Agreement at 9).  Plaintiff alleges that it fully performed its obligations under the Entest Agreement and is entitled to the unpaid shares of Entest stock.  Plaintiff also claims that Entest must lift the restrictive legend affixed to the shares it has already issued to Craig Fischer.

Entest and Bio-Matrix are in the biomedical research industry.  (A.C. ¶¶ 4, 6). Bio-Matrix is purported to be

> a biotechnology research and development company with facilities including two secure cryogenic stem cell banks, three research laboratories, aseptic cellular/tissue class 10,000/100 processing lab, hematology, microbiology and flow cytometry laboratories available for processing, culturing and storage of specimens; Bio-Matrix is ostensibly pursuing relationships with hospitals, medical institutes, research firms and biotechnology companies to assist in stem cell research, cell culturing and Regenerative Medicine therapies.

(Id. ¶ 6).  Entest purports to be a "biomedical research company specializing in new procedures, treatments and medical devices including the development of immuno-therapeutic treatments that address illnesses and maladies in both veterinary and

3

human medicine." (Id. ¶ 4).

Bio-Matrix is alleged to be the majority shareholder of Entest. (Id. ¶ 7). Koos, a citizen of California, is alleged to completely dominate Bio-Matrix and Entest. (Id. ¶¶ 8-11). Plaintiff avers that "Koos dominates and controls Entest and Bio-Matrix to such an extent that these companies are merely his alter ego." (Id. ¶ 11). With respect to Koos's dominance in the transaction at issue, plaintiff further alleges that Koos "executed both the Entest Agreement and Bio-Matrix Agreement as CEO of the respective companies, notice under both the Entest Agreement and Bio-Matrix Agreement is to be sent to the attention of Koos and Koos is the only person/individual purporting to be an agent of Entest or Bio-Matrix with whom the Plaintiff was ever engaged relevant the (sic) Entest Agreement and Bio-Matrix Agreement." (Id. ¶ 14). Koos is alleged to be the impetus behind the two agreements and he allegedly caused the defendant corporations to breach the agreements. (Id. ¶ 16).

Plaintiff filed a complaint on February 3, 2011 (Doc. 1) and an amended complaint on April 18, 2011 (Doc. 7). Plaintiff's amended complaint alleges breach of contract, unjust enrichment and implied in fact contract claims against Bio-Matrix and Entest in Counts I through VI. Plaintiff alleges in Counts VII and VIII that Koos is personally liable under the participation theory and the equitable doctrine of piercing the corporate veil, respectively. Plaintiff seeks compensatory damages, punitive damages and attorneys fees. Defendants filed a motion under Federal Rule of Civil

Procedure 12 to dismiss all of plaintiff's claims except for plaintiff's breach of an express contract claims.  In their Rule 12 motion, defendants also seek to strike plaintiff's request for punitive damages and attorney's fees.  For the following reasons, defendants' motion will be granted in part and denied in part.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a Pennsylvania Limited Liability Corporation and its sole member, Craig Fischer, is a citizen of Pennsylvania.  (A.C. ¶¶ 1-2).  Defendant Bio-Matrix Scientific Group, Inc. is a Delaware corporation with a business address in California.  (Id. ¶ 5).  Defendant Entest Biomedical, Inc. is a Nevada corporation with a business address in California.  (Id. ¶ 3).  Defendant David R. Koos is a resident and citizen of California.  (Id. ¶ 8).  Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case.  See 28 U.S.C. § 1332.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendants' Rule 12 motion attacks the complaint on two grounds.  In the first, defendant seeks the dismissal of certain claims for failure to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).   When a 12(b)(6) motion

is filed, the sufficiency of the allegations in the complaint is tested.  All well-pleaded

allegations of the complaint must be viewed as true and in the light most favorable to

the non-movant to determine whether "'under any reasonable reading of the

pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838

F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York,

768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise

a reasonable expectation that discovery will reveal evidence of' [each] necessary

element" of the claims alleged in the complaints.  Phillips v. Cnty. of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

(2007)).  Moreover, the plaintiff must allege facts that "justify moving the case

beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the

sufficiency of a complaint the court may also consider "matters of public record,

orders, exhibits attached to the complaint and items appearing in the record of the

case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d

Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions

or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of

Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

   The federal rules require only that plaintiff provide "'a short and plain

statement of the claim showing that the pleader is entitled to relief,'" a standard

which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a

6

showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'"  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  (citing Twombly, 550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  Phillips, 515 F.3d at 232 (citation omitted).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S. Ct. at 1950. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.

Defendants also attack plaintiff's complaint in their Rule 12 motion by seeking to strike portions of plaintiff's amended complaint.  See FED. R. CIV. P. 12(f).  Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).

7

"Indeed, striking a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice' and should be used 'sparingly.'  The Court has 'considerable discretion' in disposing of a motion to strike under Rule 12(f)."  DeLa Cruz v. Piccari Press,  521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)).  The basis of a court's determination on a motion to strike is limited to the pleadings.  N. Penn, 859 F. Supp. at 159.

**Discussion**

Defendants seek the dismissal of several of the counts in plaintiff's amended complaint, including the claims alleging unjust enrichment, implied in fact contract, and the claims against Koos as an individual.  Defendants also seek to strike plaintiff's requests for punitive damages and attorneys' fees.  For the following reasons, defendants' motion will be granted and denied in part.

**A.     Motion to Dismiss Implied in Fact Contract (Counts II, V)**

Defendants first contend that plaintiff's implied in fact contract claims against Entest and Bio-Matrix should be dismissed.  Defendant contends that these claims "fail to state a claim for breach of implied contract since written contracts already exist between the Plaintiff and Bio-Matrix . . . and Entest . . . ."  (Doc. 10, Defs.' Mots. to Dismiss Pl.'s Am. Compl. at 2).  Defendants also argue that the implied in fact contract claims "fail to meet the minimum pleading requirements of Fed. R. Civ. P. 8(a) since they do no more than aver conclusory allegations to plead these claims

8

for breach of implied contract."  (Id.)

Plaintiff responds that it is too early in the litigation process to dismiss the implied in fact contract claims as inconsistent with pleading an express written contract.  Plaintiff contends that the implied in fact contract claim is sufficiently supported by the facts pled, namely the allegations of the services rendered and partial payment.  The court agrees with plaintiff that it is too early in the litigation to dismiss plaintiff's claims in the alternative and that plaintiff has pled sufficient facts to satisfy Rule 8(a).

An implied in fact contract is an actual contract where the parties agree, but their intention is inferred from their conduct in the light of the surrounding circumstances, instead of being expressed in words.  Elias v. Elias, 237 A.2d 215, 217 (Pa. 1968) (citing Cameron v. Eynon, 3 A.2d 423, 424 (Pa. 1939)).  An implied in fact contract is a "true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed."  In re Pa. Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987) (citing Balt. O.R.R. v. United States, 261 U.S. 592, 597 (1923); Bloomgarden v. Coyer, 479 F.2d 201, 208 (D.C. Cir. 1973); 1 S. WILLINGSTON ON CONTRACTS § 3 (3d ed. 1957)).

Defendants' first argument focuses on the mutually exclusive nature of implied and express contracts.  As a contract that is inferred from the conduct of the parties rather than formed via express language, an implied contract cannot, by definition, exist within the same transaction as an express contract.  On this subject, the Third

Circuit has held that "[t]here cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter." Baer v. Chase, 392 F.3d 609, 616-17 (3d Cir. 2004) (citing In re Pa. Transp. Cent. Co., 831 F.2d at 1229-30; Klebe v. United States, 263 U.S. 188, 191-92 (1923)).  However, express and implied contracts become mutually exclusive once the express contract is conclusively established.  In Baer v. Chase, the Third Circuit reviewed a district court decision on a motion for summary judgment in which the defendant accepted the plaintiff's assertion of an oral agreement as true.  Id. at 614.

The instant case differs from Baer because defendants do not concede the validity of the contracts in question and it has yet to be proven to govern the dispute.  Furthermore, the court notes that other courts have allowed claims of implied contracts and express contracts to proceed, in the alternative, beyond the motion to dismiss stage.  See, e.g., Slapikas v. First Am. Title Ins. Co., 250 F.R.D. 232, 245-46 (W.D. Pa. 2008) (finding that a claim of implied contract, made in the alternative to a claim of breach of an express contract, is a common question of law among members of a class); Masterson v. Fed. Express Corp., 07-CV-2241, 2008 WL 4415700 (M.D. Pa. Sept. 26, 2008) (denying the defendant's motion to dismiss the plaintiff's complaint that contained claims for express and implied contracts in the alternative).

The court agrees with plaintiff and finds that, until the express contract has been conclusively established, plaintiff can plead an implied contract in the

alternative to an express contract.  To allow otherwise would be inconsistent with the

rules of civil procedure, which allow the pleading of multiple claims regardless of

consistency.  See FED. R. CIV. P. 8(d).

Defendants' second argument challenges the sufficiency of plaintiff's factual

pleadings with respect to the implied contract claim.  Defendants essentially argue

that plaintiff must plead that the express written contract is somehow ambiguous or

void to also plead a claim for implied contract.  (See Doc. 21, Oral Arg. Tr.

(hereinafter "Tr.") at 4-5).  The court disagrees.  Plaintiff pled sufficient facts to

establish a "facial plausibility" for its implied contract claims because plaintiff has

pled facts that indicate that the parties' conduct gave rise to a contract.  Plaintiff has

pled that it performed a number of services for defendants.  (See Bio-Matrix

Agreement at 1; Entest Agreement at 1).  Plaintiff pled that defendants accepted

these services.  (A.C. ¶¶ 74, 83).  And plaintiff pled that defendant provided partial

payment for these services.  (A.C. ¶ 36).  These facts are sufficient to draw the

reasonable inference that the parties engaged in conduct giving rise to an implied in

fact contract; therefore, plaintiff's implied in fact contract claims satisfy the pleading

requirements described in Twombly and Iqbal.  For the above-stated reasons, the

court will deny defendants' motion to dismiss plaintiff's implied in fact contract

claims.

11

**B.     Motion to Dismiss Unjust Enrichment Claims (Counts III, VI)**

Defendants advance nearly identical arguments in support of their motion to dismiss plaintiff's unjust enrichment claims as they asserted in support of their motion to dismiss the implied contract claims.  Defendants first argue that the unjust enrichment claims must be dismissed under Rule 12(b)(6) because plaintiff has also pled the existence of a valid written contract.  Defendants proffer a second ground for dismissal, that the unjust enrichment claims do not meet the Rule 8 pleading requirements as explained in Twombly and Iqbal.  We do not agree with either argument and the motion to dismiss plaintiff's unjust enrichment claims will be denied.

A claim for unjust enrichment arises in the absence of a contract.  See Commonwealth v. TAP Pharma. Prods., Inc., 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005).  Pennsylvania courts have held that "'[u]njust enrichment' is essentially an equitable doctrine."  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super Ct. 1993).  A plaintiff alleging unjust enrichment "must establish the following: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit."  TAP Pharma. Prods., 885 A.2d at 1137 (citing Styer, 619 A.2d at 350).

As discussed above, Federal Rule of Civil Procedure 8(d) allows for the

pleading of alternative theories in the same complaint, even if those theories are inconsistent.  Similar to implied in fact contracts, claims for unjust enrichment can be pled in the alternative to breach of contract claims.  Defendants argue that plaintiff has lost the ability to plead unjust enrichment in the alternative because plaintiff has also proffered a purportedly valid express contract; however, such pleadings are not inconsistent until the plaintiff has established the contract as valid and governing the dispute.  See Reynolds v. Univ. of Pa., 747 F. Supp. 2d 522, 542 (E.D. Pa. 2010) (noting that the express contract must be found to be enforceable for an unjust enrichment claim to be excluded); Masterson, 2008 WL 4415700 (finding that Rule 8(e)(2) allows for the pleading of unjust enrichment and breach of contract).

Here, plaintiff has yet to establish the validity of any express contract and defendant has not conceded that the alleged contract is valid.  Thus, even though plaintiff has pled that a contract existed, discovery may reveal that the contract was invalid, making an unjust enrichment claim necessary for recovery.  The court will not dismiss plaintiff's unjust enrichment claim on this ground as discovery will reveal whether contract or unjust enrichment is the proper cause of action.

The court also finds that plaintiff's pleadings with respect to unjust enrichment meet the Rule 8 pleading requirements as explained in Twombly and Iqbal.  Plaintiff has plead that, over the course of a year, it performed at least seven services for both Bio-Matrix and Entest.  (See A.C. ¶¶ 22, 34-35; Bio-Matrix Agreement at 1; Entest Agreement at 1).  Plaintiff pled that these web-based marketing services were

13

accepted and that defendants benefitted by these services.  (See A.C. ¶¶ 83-86, 109-113).  Given these facts, the reasonable inference that defendants are liable to plaintiff under the equitable theory of unjust enrichment can be drawn; thus satisfying federal pleading standards.  For the above stated reasons, the court will decline to dismiss plaintiff's unjust enrichment claims at such an early stage in the proceedings.

**C.     Motion to Dismiss Claims Against Defendant David Koos Made Individually Under the Participation Theory (Count VII)**

Defendants move to dismiss plaintiff's claims made against Koos individually under the participation theory of liability.  Defendants contend that plaintiff fails to meet federal pleading requirements because it does not plead any facts giving rise to a reasonable inference that a claim under the participation theory is warranted. Specifically, defendants contend that plaintiff makes conclusory statements about "tortious and unlawful conduct" rather than alleging that defendants committed any specific tort.

Plaintiff responded to defendants' argument by clarifying that the participation theory it asserts is based on Koo's participation in the alleged breach of contract and not the commission of a tort.  At the oral argument on this motion, counsel for plaintiff clarified that if the court finds that "the participation theory can only apply in a strict tort sense, then I believe that . . . these claims - - the participation theory claim must fail because strictly construing - - we don't have a tort claim."  (Tr. at 22).  The

14

court agrees with defendants and will dismiss Count VII of the Amended Complaint as a tort claims is necessary to maintain a claim under the participation theory.

Pennsylvania courts have articulated a theory of liability against corporate officers that stands separate from the veil-piercing theory discussed below.  Under the "participation theory" of liability, the court imposes liability on the individual owner or corporate officer as an actor and not as the owner.  Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983).  Liability under the participation theory "is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer.  Instead, liability attaches where the record establishes the individual's participation in the tortious activity."  Id. (citing Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978)).  As such, the participation theory provides that "a corporate officer can be held for 'misfeasance,' i.e., the improper performance of an act, but not for 'mere nonfeasance,' i.e., the omission of an act which a person ought to do."  Brindley v. Woodland Vill. Rest., 652 A.2d 865, 868 (Pa. Super. Ct. 1995).

Here, without citing supporting case law, plaintiff contends that Koos's omission of not paying plaintiff and causing the corporations he controls to breach their contracts is sufficient to impose individual liability under the participation theory. The court disagrees.  The participation theory is not as broad as plaintiff asserts, and to hold that a corporate officer could be liable under this theory for his company's breach of a contract would be a great expansion of the doctrine.  Therefore, the

15

court will grant defendants' motion to dismiss Count VII of the Amended Complaint.

**D.   Motion to Dismiss Plaintiff's Claim to Pierce the Corporate Veil (Count VIII)**

Defendants further contend in their Rule 12 motion that the court should

dismiss plaintiff's claim that the court should pierce Entest and Bio-Matrix's corporate

veils to hold Koos personally liable.  Defendants assert that, if taken as true,

plaintiff's averments with respect to piercing the corporate veil fail to meet the federal

pleading requirements.  The court agrees with defendants.  Count VIII of the

Amended Complaint will be dismissed.

In Pennsylvania, "a corporation . . . is normally regarded as a legal entity

separate and distinct from its shareholders."  Ashley v. Ashley, 393 A.2d 637, 641

(Pa. 1978); see also Advanced Tele. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC,

846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) ("the general rule is that a corporation

shall be regarded as an independent entity even if its stock is owned by one

person"); Coll. Watercolor Grp., Inc. v. H. Newbauer, Inc., 360 A.2d 200, 207 (Pa.

1976) (noting that a corporation with a single shareholder can be an independent

entity); Barium Steel Corp. v. Wiley, 108 A.2d 336, 341 (Pa. 1954) ("The fact that

one person owns all of the stock does not make him and the corporation one and the

same person").  As such, "there is a strong presumption in Pennsylvania against

piercing the corporate veil."  Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)

(citing Wedner v. Unemp't Bd., 296 A.2d 792, 794 (Pa. 1972)).

16

Despite the strong presumption against looking beyond the corporate form, the court will pierce the corporate veil and hold the owner of a corporation liable "'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)); see also Ashley, 393 A.2d at 641 ("whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interest, the fiction of the separate corporate identity may properly be disregarded."). Courts apply the alter ego doctrine to determine whether equity requires the court to pierce the corporate veil. The alter ego doctrine is "not applied by a test, but by consideration of relevant 'factors . . . to determine whether the debtor corporation is little more than a legal fiction.'" Trs. of Nat. Elevator Idus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 197 (3d Cir. 2003) (quoting Pearson, 247 F.3d at 485). Third Circuit alter ego doctrine precedent directs district courts to weigh the following factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, non-functioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." Pearson, 247 F.3d at 484-85 (citing Am. Bell Inc.v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984)).

17

The Amended Complaint alleges that Koos should be held personally liable under the alter ego doctrine.  The only factor plaintiff proffers in support of his alter ego doctrine argument is that Koos dominates Bio-Matrix and Entest.[1]  (A.C. ¶ 9-11, 121).  Even if the court accepts plaintiff's assertion that Koos dominates as the only Entest and Bio-Matrix agent/owner, the Amended Complaint nonetheless fails to state a claim for piercing the corporate veil.   Pennsylvania law is clear; the courts are to regard corporations as independent entities, even if that corporation only has one stockholder.  See Advanced Tele. Sys., Inc., 846 A.2d at 1278; Lumax Indus., 669 A.2d at 895; Watercolor, 360 A.2d at 207; Wiley, 108 A.2d at 341.   The standard for piercing the corporate veil is a demanding one.  The Third Circuit has noted that meeting the burden necessary to establish that the corporate entity is little more than a legal fiction is "notoriously difficult for plaintiffs."  Pearson, 247 F.3d at 485.

To support its claim to pierce Entest and Bio-Matrix's corporate veil, plaintiff contends its position is analogous to other cases in this District as well as the Eastern District of Pennsylvania in which the corporate veil was pierced.  (See Tr. at 23-33).  However, the plaintiffs in these cases pled the quantum of facts necessary

---

[1] When asked which veil-piercing factors he relied on, plaintiff's counsel stated, "[i]n this case Koos is everything.  He is the only person we spoke to, the only person we dealt with.  He is the C.E.O., C.F.O.  He is everything to the company.  He signed both agreements, and that's what we are saying is it's just Koos.  There is nobody else."  (Tr. at 31).  Plaintiff's counsel later confirmed that its "allegations on piercing the corporate veil are all domination and control."  (Id. at 34).

to give rise to the reasonable inference that the alter ego test could be satisfied.[2]

Here, if taken as true, plaintiff's pleadings fail to contain the quantum of facts necessary to give rise to the reasonable presumption that piercing the corporate veil is appropriate.  With the exception of domination allegations, plaintiff pleads no other equitable factor in favor of piercing Entest or Bio-Matrix's corporate veil.  Plaintiff does not plead that Koos uses these corporations for some impermissible personal use, such as to perpetuate a fraud.  Nor does plaintiff plead that Entest or Bio-Matrix are insolvent, undercapitalized corporations.  Rather, to the contrary of prevailing veil-piercing jurisprudence, plaintiff pleads that Entest and Bio-Matrix are active corporate entities by listing the scientific and research oriented activities these corporations purport to engage in.  (A.C. ¶¶ 4, 6).  Plaintiff does not plead that it provided Koos with any personal services, rather plaintiff avers that it performed valuable services, such as assisting with investor relations and SEC compliance, for the corporate defendants.  (Bio-Matrix Agreement at 1; Entest Agreement at 1).  Plaintiff also alleges it is entitled to Entest and Bio-Matrix corporate stock, which is

---

[2] See Melikian v. Corradetti, 791 F.2d 274, 281 (3d Cir. 1986) (noting the eleven fraud and insolvency related allegations plaintiff made in support of the claim to pierce the corporate veil); Morelia Consultants, LLC v. RCMP Enter., LLC, No. 3:10cv432, 2011 WL 4021070, at *8-9 (M.D. Pa. Sept. 9, 2011) (holding it would be premature to dismiss a claim for piercing the corporate veil after noting allegations that the corporate defendants were under capitalized, that the stockholder intertwined personal and corporate finances and that the corporate entity was used to commit fraud); Ginley v. E.B. Mahoney Builders, Inc., No. 04-1986, 2004 WL 2137820 (E.D. Pa. Sept. 23, 2004) (finding the veil should be pierced after noting allegations that the stockholder-defendant converted corporate funds and failed to account for other corporate funds).

an equity interest in the same corporations plaintiff wants this court to disregard as corporate entities.  (A.C. ¶¶ 24, 56).  Therefore, the court will dismiss Count VIII of the Amended Complaint.

**E.      Motion to Strike Requests for Punitive Damages**

Defendants move under Federal Rule of Civil Procedure 12(f) to strike plaintiff's request for punitive damages.  Defendants contend that, as a business dispute and contract action, punitive damages are applicable.  Plaintiff alleges that its request for punitive damages are inappropriate because defendants have acted outrageously.  Defendants' alleged "outrageous" behavior stems from plaintiff's belief that defendant acted with "blatant bad faith" and "reckless indifference to plaintiff's [contract] rights."  (Doc. 13, Pl.'s Opp'n Br. to Mot. to Dismiss at 20).  The court agrees with defendant that the requests for punitive damages should be removed from the complaint.

Punitive damages are not available under Pennsylvania law for cases in which the theory of liability rests soundly in breach of contract.  See Johnson v. State Farm Life Ins. Co., 695 F. Supp. 2d 201, 213 (W.D. Pa. 2010).  Plaintiff's claims rest in breach of contract; therefore, punitive damages are not available.  Despite plaintiff's assertions that the breach was "willful" and "blatant," the court can identify no facts that would lead any reasonable person to conclude defendants behaved outrageously.  Therefore, the court will strike plaintiff's request for punitive damages.

**F.      Motion to Strike Requests for Attorneys' Fees**

Defendants also move pursuant to Federal Rule of Civil Procedure 12(f) to strike plaintiff's request for attorneys' fees.  The general rule in Pennsylvania is that each party is responsible for his or her own attorneys' fees.  Lucchino v. Commonwealth, 809 A.2d 264, 267 (Pa. 2002).  This general rule "holds true 'unless there is express statutory authorization, a clear agreement of the parties or some other established exceptions.'" McMullen v. Kutz, 985 A.2d 769, 775 (Pa. 2009) (quoting Mosaica Acad. Charter Sch. v. Commonwealth, 813 A.2d 813, 822 (Pa. 2002)).

The parties agree that, in the instant case, an award for attorneys' fees is not provided by law.  However, the parties dispute whether Section 6(b) of the Bio-Matrix and Entest Agreements contractually provides for the shifting of attorneys' fees. Section 6(b) is identical in each agreement, and it provides in relevant part:

> Except as may be otherwise provided in this Agreement, such breach by either party will result in the other party being responsible to reimburse the non-defaulting party for all costs incurred directly as a result of the breach of this Agreement, and shall be subject to such damages as may be allowed by law including all attorneys' fees and costs of enforcing this Agreement.

Plaintiff contends that both agreements are clear as they both "specifically authorize an award of 'all attorneys' fees and costs of enforc[ement]." (Doc. 13, Pl.'s Br. in Opp'n to Mot. to Dismiss at 17).  Defendants on the other hand assert that the plain language of these agreements signify that plaintiff cannot obtain attorneys'

fees, as such an award is not specifically authorized by law.  To support this argument, defendants cite an unpublished Fifth Circuit opinion wherein the court interpreted a similar contract provision.

The court is uncertain whether either interpretation of this provision is obvious. Fischer and Koos included Section 6(b) in the agreements and without further discovery the court does not know whether Section 6(b) is meaningless as defendants assert or meant to assign the cost of enforcement as plaintiff avers. Therefore, the court will deny defendants' motion to strike plaintiff's request for attorneys' fees as it is too early in the proceedings to determine whose interpretation of this provision is correct.

**Conclusion**

For the reasons stated above, Defendants' motion to dismiss and strike portions of the Amended Complaint will be granted in part and denied in part.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **18 KT.TV, LLC,** | : | **No. 3:11cv244** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ENTEST BIOMEDICAL, INC.;** | : | |
| **BIO-MATRIX SCIENTIFIC GROUP;** | : | |
| **and DAVID R. KOOS;,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**AND NOW**, to wit, this 7th day of November 2011, defendants' Rule 12 Motion (Doc. 10) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Defendants' motion to dismiss Count VII of the Amended Complaint (Participation Theory) is **GRANTED**;

2.    Defendants' motion to dismiss Count VIII of the Amended Complaint (Piercing the Corporate Veil) is **GRANTED**;

3.    Defendants' motion to strike plaintiff's request for punitive damages is **GRANTED**;

4.    The motion is **DENIED** in all other respects (i.e. defendants' motion to dismiss Counts II, III, V and VI of the Amended Complaint and defendants' motion to strike plaintiff's request for attorneys' fees).

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United Stated District Court**

23